MARK A BROWNE,

        Petitioner,

v.

HOLLY BLANTON-BROWNE,

        Respondent.

_____/

IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D16-679

Opinion filed September 19, 2016.

Petition for Writ of Certiorari. Original jurisdiction.

Mark A. Browne, pro se, Petitioner.

Shelley L. Thibodeau of Stone Lockett, PA, Jacksonville, for Respondent.

RAY, J.

Mark A. Browne, Petitioner, has filed a petition for writ of certiorari arguing that the circuit court departed from the essential requirements of the law by failing to follow Florida Family Law Rule of Procedure 12.615 when finding him in indirect civil contempt for failure to pay his child support arrearage and the attorneys' fees of Holly Blanton-Browne, Respondent. We agree. Accordingly, we grant the petition.

On December 16, 2015, Respondent filed a motion for civil contempt/enforcement, alleging that Petitioner had failed to pay his court-ordered child support, arrearages, and attorneys' fees. The court issued an order setting a hearing on

the motion. However, the notice of hearing did not contain language warning Petitioner that if he did not appear at the hearing, he could be arrested and held for up to forty-eight hours pending a hearing, as required by Rule 12.615(b).

Respondent appeared at the appointed time, but Petitioner did not. After the hearing, the court issued an order finding Petitioner in indirect civil contempt for failure to pay "back child support" and attorneys' fees despite having the ability to do so. The court ruled that Petitioner could purge himself of the contempt by immediately paying $19,522 (the approximate amount of the arrearage). Further, the court issued a writ of bodily attachment to compel Petitioner to appear before the court and show cause why he should not be incarcerated until such time as he complies with the court order.

On January 29, 2016, Petitioner was arrested under the authority of the writ. At some point, he was released with instructions to appear before the court at a certain time and place on February 1, 2016. A few days later, another writ of bodily attachment was issued. We have no record of what occurred between Petitioner's release from custody and the re-issuance of the writ of bodily attachment or what has happened since.

Petitioner contends that he was not afforded a meaningful opportunity to be heard after the issuance of the writ of bodily attachment due to erroneous instructions given to him about where to appear to present his evidence. Respondent does not

dispute Petitioner's factual allegations about what occurred between his release from custody and the issuance of the second writ. We need not request any record to substantiate Petitioner's claims or attempt to determine exactly what happened,[*] as Petitioner has also argued correctly that errors occurred earlier in the process, and the record shows that those errors have not been remedied.

Under Rule 12.615, a notice of hearing on a motion for civil contempt related to family support matters must specify the time and place of the hearing and contain the following language:

> FAILURE TO APPEAR AT THE HEARING MAY RESULT IN THE COURT ISSUING A WRIT OF BODILY ATTACHMENT FOR YOUR ARREST. IF YOU ARE ARRESTED, YOU MAY BE HELD IN JAIL UP TO 48 HOURS BEFORE A HEARING IS HELD.

When the alleged contemnor fails to appear for the hearing after proper notice, the hearing is to proceed for the limited purpose of allowing the movant to make a prima facie case of contempt in accordance with Rule 12.615(c)(1). If the movant meets this burden, the court is required to "set a reasonable purge amount based on the individual circumstances of the parties" and may issue a writ of bodily attachment for the purpose of having the alleged contemnor brought before the court to answer the motion. Fla. Fam. L. R. P. 12.615(c)(2)(B).

---

[*] See Fla. R. App. P. 9.220(a).

3

After the court hears from both parties, the court is to enter an order granting or denying the motion for contempt. See Fla. Fam. L. R. P. 12.615(d). If the order grants the motion, it must contain findings that the contemnor had the present ability to pay support and willfully failed to do so, and it must contain a recital of the facts on which the findings are based. Fla. Fam. L. R. P. 12.615(d)(1). The court may order a sanction designed to compel compliance with the earlier support orders. Fla. Fam. L. R. P. 12.615(d)(2). However, any such coercive sanction must be accompanied by a provision that gives the contemnor the opportunity to "purge . . . the contempt." Fla. Fam. L. R. P. 12.615(e). The court must make a finding that the contemnor has the present ability to comply with the purge provision and state the factual basis for that finding. Id.

The first error in this case took place at the beginning of the process, when Petitioner was not warned that his failure to appear at the initial hearing on the motion for contempt could result in a writ authorizing his arrest. Before being placed at risk of arrest, Petitioner should have been given the opportunity to appear voluntarily before the court with a full appreciation of the likely consequences if he failed to do so. See Fla. Fam. L. R. P. 12.615(b). Because it is undisputed that Petitioner has not yet appeared before the judge who found him in contempt after the faulty hearing in order to present his defense, the error in the lack of notice is not harmless and has not been cured. Cf. Woolf v. Woolf, 901 So. 2d 905, 911 (Fla. 4th DCA 2005) (holding that

error in the lack of the required warning language was waived when the alleged contemnor appeared at the hearing).

The result of the faulty initial hearing was not only the issuance of a writ of bodily attachment without warning, but also a premature and insufficiently supported finding of contempt after an incomplete process. The rule does not envision a finding of contempt before the alleged contemnor actually appears in court, as occurred here. Moreover, the premature finding of contempt lacks the required supportive finding that Petitioner's failure to pay the previously ordered amount was willful, and it lacks the required recital of the factual basis for the court's determinations that Petitioner failed to pay while having the ability to do so.

These errors might have been corrected or rendered harmless after Petitioner's arrest, at least to the extent a faulty arrest can be rendered harmless, if Petitioner had been taken before the judge who issued the contempt order for a hearing on the motion under Rule 12.615(c)(2)(B). However, we know from the re-issuance of the writ that Petitioner has not been brought before the court for the purpose of completing the process on Respondent's motion and perhaps correcting the earlier errors. It appears that the initial procedural misstep of failing to warn Petitioner of the consequences of absenting himself from the hearing set in motion a series of violations of the rule. The result is an order finding Petitioner in contempt after an incomplete process that leaves Petitioner under a continual threat of arrest unless he immediately pays almost

5

$20,000, even though the court has not heard from Petitioner to be sure that he has the present ability to do so and even though he has already been arrested once on this matter.

We question why Petitioner did not simply contact the court after issuance of the second writ so that he could make arrangements to complete the process on the contempt motion, as must inevitably occur, rather than invoke this Court's certiorari jurisdiction and live in fear of arrest while his petition was pending. However, Petitioner's questionable choices do not eliminate the trial court's significant errors in this case. Accordingly, we grant the petition before us and quash the order of contempt and related writ of bodily attachment. The trial court is, of course, free to conduct further proceedings on Respondent's motion for contempt after issuance of a notice in compliance with Rule 12.615(e).

PETITION GRANTED.

MAKAR and OSTERHAUS, JJ., CONCUR.